UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES KRASOWSKI,                          :

     Plaintiff,                        :

                                           PRISONER
V.                                        :    CASE NO. 3:10-cv-2054 (RNC)

STEVEN LAZGROVE, ET AL.,                  :

     Defendants.                       :

RULING AND ORDER

     Plaintiff, a Connecticut inmate proceeding pro se, brings this
action under 42 U.S.C. § 1983 against Dr. Steven Lazgrove and Nurse
Kathy Benner alleging deliberate indifference to a serious medical
need in violation of the Eighth Amendment.  The defendants have
moved for summary judgment (ECF No. 23) and the plaintiff has moved
for leave to amend his complaint (ECF No. 28).  The plaintiff seeks
leave to add a claim for negligence against the State of
Connecticut, which has been authorized by the General Assembly by
means of a resolution pursuant to Conn. Gen. Stat. § 4-159.  See
2011 Substitute House Joint Resolution No. 69.[1]  Plaintiff asks the
Court to exercise supplemental jurisdiction over the claim against
the State under 28 U.S.C. § 1367.  The Court concludes that the
defendants are entitled to summary judgment on the claims brought
against the individual defendants under § 1983.  The Court also
concludes that the plaintiff should be granted leave to amend his

---

     [1]  Section 4-159 provides that the General Assembly may
grant a claimant permission to sue the state "when the General
Assembly deems it just and equitable and believes the claim to
present an issue of law or fact under which the state, were it a
private person, could be liable."

complaint to add the negligence claim against the State to avoid a possible forfeiture of the claim.  In accordance with well-established practice, however, the Court declines to exercise supplemental jurisdiction over the claim.  Accordingly, the defendants' motion for summary judgment is granted, the plaintiff's motion for leave to amend is granted, and the action will be dismissed without prejudice to the plaintiff's right to proceed on his claim against the State in state court.[2]

I.

Summary judgment may be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  In deciding whether this standard is met, the evidence must be viewed in a manner most favorable to the plaintiff.

The summary judgment record, viewed most favorably to the plaintiff, discloses the following.  On May 16, 2006, the Department of Correction ("DOC") transferred the plaintiff to

---

[2]  The Court notes that the plaintiff must bring the claim against the State in state court within thirty days after the Clerk enters judgment in the present case dismissing the claim without prejudice.  The applicable statute, 28 U.S.C. § 1367, provides: "The period of limitations for any claim asserted under [a district court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).  Here, the resolution permitting the plaintiff to sue the State required the claim to be brought not later than one year from June 8, 2011, the date of final adoption of the resolution.  The motion for leave to add the claim was filed on June 7, 2012, one day before the one-year period expired.  Thus, the claim may be time-barred unless it is brought in state court within 30 days after judgment is entered in the present case.

Garner Correctional Institute.  Dr. Lazgrove, a psychiatrist stationed at Garner, treated the plaintiff from late August 2007 through December 2007.

When Dr. Lazgrove first saw the plaintiff on August 30, 2007, the plaintiff had been taking Klonopin, a medication for anxiety and panic disorders, for more than three years.  The plaintiff was also taking other medications.  On September 20, 2007, Dr. Lazgrove increased the plaintiff's dosage of Klonopin in response to the plaintiff's complaints of anxiety.

On October 18, 2007, Dr. Lazgrove observed that the plaintiff's continuing complaints of anxiety were inconsistent with his demeanor.  In addition, they were inconsistent with his interactions with other inmates during the preceding weeks, as observed by Dr. Lazgrove and others.  The record available to Dr. Lazgrove showed that three days earlier the plaintiff had been caught "palming" his medication while pretending to ingest it.  In explaining to Dr. Lazgrove why he did not take his medication, the plaintiff stated that he did not need it because he had just returned from administrative segregation.  Dr. Lazgrove thought the plaintiff's explanation was "absurd."  Dr. Lazgrove suspected that the plaintiff, who had a history of substance abuse, "palmed" his medication with the intent to sell it to other inmates, although the plaintiff denied doing so.

During a meeting with the plaintiff on December 11, 2007, Dr. Lazgrove again noted a disparity between the plaintiff's self-reports of anxiety and his behavior on the cellblock, which

exhibited no signs of anxiety.  At that time, Dr. Lazgrove directed that the plaintiff's Klonopin prescription be discontinued.  Dr. Lazgrove told the plaintiff that he was being taken off Klonopin because other inmates had diverted this medication.

Dr. Lazgrove decided to taper the plaintiff's dosage of Klonopin over a period of two weeks.  On December 13 and 14, 2007, the plaintiff complained to a supervisory officer about increased anxiety.  On December 24, the plaintiff told Dr. Lazgrove that he felt severe anxiety and dizziness and was afraid he would have a seizure.  In order to reduce the plaintiff's anxiety, Dr. Lazgrove started him on a trial of Clonodine.  Dr. Lazgrove entered the following order in the chart with regard to the Clonodine: "Hold if BP>90/60, HR<60."  The plaintiff's vital signs were taken by prison staff later that evening.

On December 26, 2007, the plaintiff again complained to his supervisory officer about anxiety.  Dr. Lazgrove met with the plaintiff the next day and performed an evaluation.  Dr. Lazgrove and the plaintiff agreed upon a plan moving forward, whereby the plaintiff would exercise his coping skills while continuing to take his existing prescription regimen.  It was agreed that an appointment would be made for the plaintiff to see Dr. Lazgrove within the next one to two weeks, at which time Dr. Lazgrove would re-evaluate the plaintiff's symptoms and the Clonodine trial.

On January 2, 2008, a nurse saw the plaintiff convulsing on the floor of his cell.  When the plaintiff was later examined, his heart rate was 140 bpm.  Plaintiff alleges that he had a seizure as

a result of Klonopin withdrawal, which caused him to fall to the
floor.  When the plaintiff fell, he suffered severe, painful
injuries to both shoulders, necessitating surgery.

II.

Deliberate indifference by prison officials to a prisoner's
serious medical need constitutes cruel and unusual punishment in
violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S.
97, 104 (1976).  The Eighth Amendment protection afforded to
inmates against deliberate indifference to their medical needs is
not a substitute for the protection afforded patients under state
tort law.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).
And prisoners who have been injured as a result of medical
negligence do not automatically have a claim for deliberate
indifference under the Eighth Amendment.  See Hathaway v. Coughlin,
37 F.3d 63, 68 (2d Cir. 1994) ("The [constitutional] inquiry
remains whether the treating physician or other prison official was
deliberately indifferent to a prisoner's serious medical needs, not
whether the doctor's conduct is actionable under state malpractice
law.").  To establish a violation of the Eighth Amendment's
protection against cruel and unusual punishment, a plaintiff must
prove that the defendant acted with a state of mind akin to
criminal recklessness, which is more culpable than negligence.  In
particular, it must be proven that the defendant denied or delayed
necessary treatment knowing that the failure to provide treatment
involved a substantial risk of serious harm.  See Salahuddin v.
Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

Plaintiff claims that Dr. Lazgrove's decision to discontinue the Klonopin evinces deliberate indifference to a substantial risk of serious harm because the plaintiff had been taking Klonopin for several years and still needed it to control panic attacks and debilitating anxiety.  Plaintiff claims that Dr. Lazgrove discontinued the Klonopin in deference to DOC policy rather than in the exercise of medical judgment.  He further claims that Dr. Lazgrove was deliberately indifferent to an obvious risk of a seizure created by his decision to taper the Klonopin over two weeks, rather than a longer period, without prescribing appropriate anti-seizure medications and ensuring adequate monitoring of the plaintiff's medical condition.

Plaintiff relies heavily on a letter by Jerome Schnitt, a psychiatrist who has not examined the plaintiff but has reviewed the medical record.[3]  In the letter, Dr. Schnitt states that had Dr. Lazgrove followed the approved standard for tapering Klonopin, a fifty-four day taper would have been appropriate, not a fourteen-day taper.  In addition, Dr. Schnitt states that the dosage of Clonodine prescribed by Dr. Lazgrove in response to plaintiff's complaints of increased anxiety was insufficient to address the risk of seizure during the taper period, particularly in light of

---

[3]  The defendants object to the plaintiff's reliance on this letter on the grounds that the letter is hearsay and the plaintiff failed to disclose Dr. Schnitt as an expert during the course of discovery, which is now closed.  The Court finds it unnecessary to rule on the defendants' objection to the letter because the plaintiff's Eighth Amendment claim is unavailing even assuming the opinions expressed in the letter are admissible.

other medications the plaintiff was taking.  Dr. Schnitt also states that the plaintiff's condition was not properly monitored. Dr. Schnitt ultimately concludes that the care provided to the plaintiff "does not meet the community standard in Connecticut for appropriate medical care."

After careful review, the Court concludes that the record does not permit a reasonable finding that Dr. Lazgrove was deliberately indifferent in violation of the Eighth Amendment.[4]  The record establishes that Dr. Lazgrove assessed the plaintiff's need for Klonopin on an individualized basis, initially increasing it in September 2007, then discontinuing it several months later.  Dr. Lazgrove's decision to discontinue the Klonopin in December 2007 was based on his assessment of the plaintiff's condition at that time and took account of the plaintiff's appearance and behavior during the preceding three months.  The contemporaneous medical record shows that Dr. Lazgrove regarded the plaintiff's self-reports of anxiety as inconsistent with the plaintiff's appearance and behavior.  The record also shows that Dr. Lazgrove believed the plaintiff had been caught "palming" his medication, which Dr. Lazgrove reasonably suspected was an attempt to divert the medication in order to sell it, as other inmates had done.  Given these factors, Dr. Lazgrove could conclude, in the exercise of medical judgment, that the Klonopin should be discontinued.

---

[4]  The defendants concede for the purposes of this motion that the consequences of failing to treat the plaintiff's anxiety were objectively sufficiently serious to support an Eighth Amendment claim.

Dr. Lazgrove's other allegedly wrongful acts and omissions do not provide the basis for a constitutional claim.  The evidence does not support a reasonable inference that when Dr. Lazgrove decided to use a two-week period to taper the Klonopin, he was subjectively aware that a longer period had to be used in order to avoid a substantial risk of serious harm to the plaintiff.  As of that date, there was no indication that the plaintiff had ever had a seizure.  On December 24, 2007, when the plaintiff told Dr. Lazgrove he feared having a seizure, Dr. Lazgrove did not ignore the plaintiff's concern.  Instead he prescribed Clonodine and ordered that the plaintiff's vital signs be monitored.  After the plaintiff again complained of anxiety, Dr. Lazgrove performed an evaluation and concluded that no change in medication was required. The plaintiff made no further complaints before the alleged seizure occurred six days later.

Dr. Schnitt's opinions that the tapering period Dr. Lazgrove selected was too short, the Clonodine he prescribed was insufficient, and the monitoring he ordered was inadequate may well support a triable claim of negligence under state law.  Even when interpreted in a manner most favorable to the plaintiff, however, Dr. Schnitt's opinions do not support a reasonable finding that Dr. Lazgrove consciously disregarded a substantial risk of serious harm to the plaintiff, as required to prove a claim of deliberate indifference in violation of the Eighth Amendment's ban on cruel and unusual punishment.  See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("There is virtually no evidence . . . to support a

conclusion by a reasonable juror that [the defendant] was actually aware of that immediate danger [of alcohol withdrawal].").

Turning to the constitutional claim against Nurse Benner, the plaintiff claims that she was deliberately indifferent in failing to monitor his blood pressure and heart rate.  The plaintiff alleges that if she had performed the monitoring herself, or directed other medical staff to do so, the change in his medical condition would have been detected in time to avert the seizure that allegedly occurred on January 2, 2008.  The claim against this defendant is predicated on her role as the primary nurse responsible for the plaintiff's care.  See Pl.'s Aff. ¶ 19.

Viewing the record in a manner most favorable to the plaintiff, the evidence does not support a reasonable inference that Nurse Benner knew there was a substantial risk the plaintiff would have a seizure as a result of Klonopin withdrawal unless he was properly monitored.  Dr. Lazgrove's order referred only to the Clonodine and did not indicate that the plaintiff's condition had to be monitored to avert a risk of a seizure due to the withdrawal of Klonopin.  In addition, the evidence does not support a finding that Nurse Benner intentionally disregarded Dr. Lazgrove's order. In fact, as plaintiff notes in criticizing the care he received from Dr. Lazgrove, the order in the chart did not direct that plaintiff's condition be monitored at specified intervals. Although the plaintiff is entitled to the benefit of all reasonable inferences that can be drawn in his favor, speculative inferences about Nurse Benner's state of mind are insufficient to withstand a

properly supported motion for summary judgment.  See Harlen Assocs.
v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

                              III.

     After the defendants moved for summary judgment, the plaintiff
moved for leave to amend his complaint to add the negligence claim
against the State authorized by the General Assembly.  The
defendants oppose the motion for leave to amend on the ground that
the resolution permitting the claim against the State requires the
plaintiff to bring the claim in state court.  The plaintiff
responds that the defendants' interpretation of the resolution is
incorrect and the claim against the State is within the scope of
this Court's supplemental jurisdiction because it is closely
related to the claims against the individual defendants under §
1983.

     Plaintiff's motion for leave to amend could be denied on the
basis that when summary judgment is properly granted on all federal
claims, a court should decline to exercise supplemental
jurisdiction over state law claims.  There is some risk, however,
that denying the plaintiff's request for leave to amend to add the
claim against the State could result in a forfeiture of the claim,
notwithstanding the General Assembly's resolution permitting it,
due to the running of the one-year limitations period contained in
the resolution.  To avoid this risk, the Court grants the
plaintiff's motion for leave to amend but declines to exercise
supplemental jurisdiction over the claim.  In doing so, the Court
expresses no opinion on the disputed issue whether the claim could

be adjudicated here if the motion for summary judgment were denied.

IV.

For the foregoing reasons, the defendants' motion for summary judgment (ECF No. 23) is granted and the plaintiff's motion for leave to amend (ECF No. 28) is also granted.  The § 1983 claims against Dr. Lazrove and Nurse Benner, contained in count one of the amended complaint, are dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over the negligence claim against the State, contained in count two of the amended complaint, which is dismissed without prejudice.  The Clerk will enter judgment accordingly and close the file.[5]

So ordered this 19th day of February 2013.


                                    /s/ RNC
                         _____
                            Robert N. Chatigny
                         United States District Judge

---

[5] As noted at the outset, the claim against the State may be time-barred unless it is brought in state court within thirty days of the entry of judgment in this Court dismissing the claim without prejudice.